IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 17, 2013 Session

## STATE OF TENNESSEE v. THOMAS LEE HUTCHISON

**Appeal from the Criminal Court for Knox County**
**No. 88264     Jon Kerry Blackwood, Judge**

**No. E2012-02671-CCA-R3-CD - Filed April 11, 2014**

**JOSEPH M. TIPTON, P.J., concurring in part and dissenting in part.**

I concur with the results and most of the reasoning in the majority opinion. I disagree, though, with the majority's conclusion that the Confrontation Clause was not implicated in the admission of the autopsy report. I believe the admission of the report in this case violated the Confrontation Clause but was harmless beyond a reasonable doubt.

In *State v. James Drew Freeman, Jr.*, No. M2011-00184-CCA-R3-CD (Tenn. Crim. App. May 9, 2012), *perm. app. denied* (Tenn. Oct. 17, 2012), this court concluded that an autopsy report introduced through a medical examiner who did not perform the victim's autopsy was testimonial evidence because the condition of the victim's body when discovered by the police clearly indicated "foul play" and because the defendant had already been identified as the perpetrator by the time the autopsy was conducted. Slip op. at 15. This court noted that the autopsy was conducted with the primary purpose of being used in a criminal trial and as evidence against the defendant. *Id.*, at slip op. 15-16 (citing *United States v. Moore*, 651 F.3d 30, 73 (D.C. Cir. 2011) (classifying autopsy reports as testimonial evidence when the autopsy was requested by the police and evidence indicated that the victim's death was a homicide). This court concluded that the admission of the report without presenting the testimony of the medical examiner who prepared the report violated the defendant's confrontation rights. *Id.*, slip op. at 16. It also concluded that the error was harmless because the defendant did not contest the finding of a homicide. *Id.*

Following *James Drew Freeman, Jr.*, this court addressed the Confrontation Clause in an identical context in *State v. Jessie Dotson*, No. W2011-00815-CCA-R3-DD (Tenn. Crim. App. June 25, 2013), which is currently pending before our supreme court. In *Jessie Dotson*, this court concluded under a plain error analysis that the admission of the victims' autopsy reports through the testimony of a medical examiner who did not perform the autopsies did not violate the defendant's confrontation rights. Slip op. at 77. There, although

the victims' deaths were clearly homicides, the defendant was not identified as a suspect until after the autopsies were performed. *Id.* The court concluded that the primary purpose of the autopsies was not to "target the defendant as the perpetrator but instead to identify the injuries sustained by the victims and their causes of death." *Id.* I note that at the time of the autopsies, the police had no suspects, and the defendant was placed in protective custody for fear the killings were gang-related. *Id.*, slip op. at 17. Although this court concluded that the United States Supreme Court's opinion in *Williams v. Illinois*, — U.S. —, 132 S. Ct. 2221 (2012), abrogated *James Drew Freeman, Jr.*, I am not convinced that all cases in which an autopsy report is admitted as evidence through the testimony of a medical examiner who did not perform the autopsy would comply with the Confrontation Clause.

In *Williams v. Illinois*, the relevant report was a DNA analysis conducted during a rape investigation. The perpetrator was unidentified and remained at large, and the DNA analysis was performed in an effort to identify the perpetrator. *Williams*, — U.S. —, —, 132 S. Ct. at 2228. The defendant was not a suspect at the time of the analysis. Although the Court concluded that the DNA report was not offered for the truth of the matter asserted, which eliminated the confrontation issue, it also concluded that had the report been offered for its truth, no confrontation issue would have existed. *Id.* at 2242. The Court concluded that the report was not prepared for the primary purpose of accusing a "targeted individual" but rather to "catch a dangerous rapist who was still at large, not to obtain evidence for use against the petitioner, who was neither in custody nor under suspicion at that time." *Id.* at 2243. The Court noted that no one at the laboratory who conducted the analysis "could have possibly known that the [DNA] profile it produced would turn out to inculpate the petitioner." *Id.* at 2244. The Court said that under these circumstances, the only incentive was to produce a scientifically sound and reliable DNA profile, which is the primary concern of the Confrontation Clause. *Id.*

Although not a definitive test for determining whether the Confrontation Clause has been violated, the Supreme Court noted a general pattern in which all but one of the post-*Crawford* cases in which the Confrontation Clause was violated had two characteristics: "(a) they involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct and (b) they involved formalized statements such as affidavits, depositions, prior testimony, or confessions." *Id.* (citing *Bullcoming v. New Mexico*, 564 U.S. —, 131 S. Ct. 2705 (2011) (certified lab report having the purpose of showing that the defendant's blood alcohol concentration exceeded the legal limit); *Melendez-Diaz v. Massachuttes*, 557 U.S. 305 (2009) (certified lab report having the purpose of showing that the substance connected to the defendant contained cocaine)). The exception was *Hammon v. Indiana*, 547 U.S. 813, 829-32 (2006). The court noted, though, that in *Hammon* the statements involved a past offense in which the victim identified the defendant as the perpetrator and described the defendant's conduct during a domestic dispute. *Id.* In

*Hammon*, the incident had ended when the police arrived and did not involve an ongoing emergency, resulting in a violation of the Confrontation Clause. *Id*. at 819; *see Williams*, 547 U.S. at 2242.

I do not believe that all circumstances involving testing should require a known suspect before the Confrontation Clause is implicated. For the purpose of this case, though, I believe that the Confrontation Clause was implicated when the autopsy report was admitted through the testimony of a medical examiner who did not perform the autopsy. In the present case, when the victim's body was found by the police, his pants were pulled down, he was lying face down on the floor, and blood spatter surrounded him. Items in the room where the victim was found appeared to have been moved after the killing. Likewise, the victim clearly suffered blunt force trauma from the crowbar and knife found at the scene. At the time the victim was discovered by the police, the evidence indicated that the victim's death was not of natural causes. Likewise, the record shows that before the victim's autopsy commenced, the Defendant was the identified perpetrator involved in the victim's killing. Mr. Mitchell testified at length about Ms. Cox's telling him that the Defendant had stabbed the victim, his finding the victim wrapped in a blanket with a crowbar lying on top of him, and his seeing the victim "had no brains in his head." Mr. Mitchell said that the Defendant attempted to run and that the Defendant said he "didn't do it" by himself when asked why he killed the victim. All this information was conveyed to the police.

These facts comply with the general pattern noted by the Supreme Court in which the Confrontation Clause has been violated. The victim's death was a homicide, and the Defendant was the identified suspect before the autopsy commenced. Thus, I conclude that the autopsy in this case was conducted with the primary purpose of being used in a criminal trial and used as evidence against the Defendant, thereby implicating the Confrontation Clause.

Although I conclude that the admission of the autopsy report violated the Confrontation Clause, I also conclude that the error was harmless. Dr. Mileusnic-Polchan's analysis and conclusions were based on other evidence not affecting the Defendant's confrontation rights. The doctor reviewed photographs taken during the autopsy to make conclusions regarding the victim's cause of death, which she said "demonstrated how the crowbar found at the scene matched the injury pattern." She, likewise, testified regarding the stab wounds and noted the "knife blade remained in the stab wound on the victim's left

side." As a result, the error was harmless beyond a reasonable doubt, and the Defendant is not entitled to relief.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE